IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

KAROLYN S. PLUNKETT,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,[1]

       Defendant.

No. 12-CV-4067-DEO

ORDER

_____

This matter is before the Court pursuant to Karolyn S. Plunkett's (hereinafter Ms. Plunkett) request for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 et seq. Hearing was held on this matter on February 21, 2013. After listening to the arguments, the Court took the issues under advisement and now enters the following.

I.  FACTUAL BACKGROUND

Ms. Plunkett was born in 1953, and she was 56 years of age on her alleged onset date of disability. Docket No. 7,

_____

[1] Ms. Plunkett originally filed this case against Michael J. Astrue, Comm. of Social Security. On February 14, 2013, Carolyn W. Colvin became the Commissioner of SSA. The Court, therefore, substitutes Commissioner Colvin as the defendant in this action. Fed. R. Civ. P. 25(d)(1).

Tr. 142. She has a master's degree. Ms. Plunkett worked as a hotel manager from 1992 to 1999, and as a casino manager from 2000 to 2009. Docket No. 7, Tr. 164. She was terminated from the latter position on February 10, 2009, for reasons other than her medical condition. Docket No. 7, Tr. 163. In her disability report, she alleged disability based on COPD, myopathy, sleep apnea, obesity and arthritis.

## II. PROCEDURAL HISTORY

Ms. Plunkett filed an application for disability benefits under Title II. Docket No. 7, Tr. 142-48. The claim was denied initially (Docket No. 7, Tr. 89, 100-03) and on reconsideration (Docket No. 7, Tr. 90, 105-08). On August 15, 2011, an administrative law judge ("ALJ") found the Plaintiff was not under a disability as defined in the Act. Docket No. 7, Tr. 26-27. On May 24, 2012, the Appeals Council of the Social Security Administration denied the Plaintiff's request for review. Docket No. 7, Tr. 1-3. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an

2

individual is disabled and entitled to benefits. 20 C.F.R. §
404.1520. The five successive steps are: (1) determination
of whether a plaintiff is engaged in "substantial gainful
activity," (2) determination of whether a plaintiff has a
"severe medically determinable physical or medical impairment"
that lasts for at least 12 months, (3) determination of
whether a plaintiff's impairment or combination of impairments
meets or medically equals the criteria of a listed impairment,
(4) determination of whether a plaintiff's Residual Functional
Capacity (RFC) indicates an incapacity to perform the
requirements of their past relevant work, and (5)
determination of whether, given a Plaintiff's RFC, age,
education and work experience, a plaintiff can "make an
adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial
gainful activity" within the claimed period of disability,
there is no disability during that time. 20 C.F.R. §
404.1520(a)(4)(i). At step 2, if a plaintiff does not have a
"severe medically determinable physical or mental impairment"
that lasts at least 12 months, there is no disability. 20
C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's

3

impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no

4

disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Plunkett did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated that:

> The claimant meets the insured status requirements of the Social Security Act through September 30, 2014. The claimant has not engaged in substantial gainful activity since February 10, 2009, the alleged onset date (20 CFR 404.1571 et seq.). The claimant has the following severe impairments: Chronic obstructive pulmonary disease ("COPD"); obesity; myopathy; and history of breast cancer with

5

right mastectomy (20 CFR 404.1520(c)).
These impairments interfere more than
minimally with the claimant's ability to
perform basic work-related functions...
The claimant does not have an impairment or
combination of impairments that meets or
medically equals the severity of one of the
listed impairments in 20 CFR Part 404,
Subpart P, Appendix 1 (20 CFR 404.1520(d),
404.1525 and 404.1526).

Docket No. 7, Tr. 21. The ALJ went on to say that:

After careful consideration of the entire
record, the undersigned finds that the
claimant has the residual functional
capacity to perform light work as defined
in 20 C.F.R. § 404.1567(b). She can
occasionally lift or carry 20 pounds and
frequently lift or carry 10 pounds. She
has no restrictions on standing, sitting,
or walking. She can stand, sit, or walk 6
hours in an 8-hour day. She can use her
hands for frequent, but not constant,
handling, fingering, and feeling. She can
occasionally perform postural activities;
i.e., climb, balance, stoop, kneel, crouch,
and crawl. She should avoid ladders,
concentrated exposure to cold, humidity,
toxic fumes, noxious gases, and odors.

In making this finding, the undersigned has
considered all symptoms and the extent to
which these symptoms can reasonably be
accepted as consistent with the objective
medical evidence and other evidence, based
on the requirements of 20 CFR 404.1529 and
SSRs 96-4p and 96-7p. The undersigned has
also considered opinion evidence in
accordance with the requirements of 20 CFR
404.1527 and SSRs 96-2p, 96-5p, 96-6p and
06-3p.

6

Docket No. 7, Tr. 22.  Additionally, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The State agency determined the claimant could return to her past work as a manager. (Exhibit 4B)  As provided by SSR 96-6p, the undersigned has given weight to the State agency's opinion.  The State agency physician-examiners are acceptable medical sources.  Their opinions are based on clinical findings and other substantial medical evidence of record... The claimant is capable of performing past relevant work as a hotel general manager and restaurant manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565). As generally performed, the jobs ranged from sedentary to light work and were skilled.  (Exhibit 16E)  In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.  As contemplated by SSRs 82-61 and 82-62, the demands of this job would not exceed the claimant's residual functional capacity, and the claimant's impairments would not prevent her from performing this job.

Docket No. 7, Tr. 23-25.

That said, the ALJ also performed a step 5 evaluation and stated:

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process. The claimant was born on October 17, 1953 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563). The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564). The claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. § 404.1569, 404.1569(a) and 404.1568).

Docket No. 7, Tr. 26.

In making his finding, the ALJ disregarded both Ms. Plunkett's testimony and the testimony of Shelley VanHoozer, stating:

> Shelley VanHoozer, ARNP, who completed the consultative examination in January 2010, suggested residual functional capacity findings, but these appear to be restatements of the claimant's reports rather than Ms. VanHoozer's independent judgment of the claimant's work capabilities. Accordingly, the undersigned has not given great weight to Ms.

8

VanHoozer's opinion the claimant would need frequent breaks. (Exhibit 4F/4) The claimant testified essentially that she was performing a medium job (heavy lifting and walking 5 miles per day, by her report), then was fired for requesting leave, then drew unemployment benefits, and stated at the hearing that she currently can walk only 20 to 30 feet without fatigue. The claimant's testimony in this regard strains credulity and has not been given great weight. Even at the sedentary level, the claimant can perform one past job and has many skills that could transfer to other semi-skilled or skilled sedentary jobs.

Docket No. 7, Tr. 25.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th

9

Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV. ISSUES

In her brief, Ms. Plunkett argues that the ALJ incorrectly rejected the opinion of a treating nurse practitioner and that the ALJ incorrectly dismissed Ms. Plunkett's testimony based on credibility issues.

10

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

### A. Opinion of Shelley VanHoozer, ARNP

Ms. Plunkett's first argument is that the ALJ improperly discounted the opinion of Shelley VanHoozer, a nurse practicioner. In her brief, Ms. Plunkett argued:

> Shell[e]y VanHoozer, ARNP, performed a consultative evaluation. See 20 C.F.R. §404.1510. Ms. VanHoozer saw the claimant on January 19, 2010. (AR 302)... Ms. Van Hoozer described the claimant as appearing older than her stated age. Ms. Plunkett was fatigued all the time and did not sleep well. She complained of dyspnea at rest and with activity and shortness of breath with most exertion. (AR 303) Ms. Plunkett's gait was slow and steady. (AR 302) Ms. VanHoozer concluded: *Based on Mrs. Plunkett's history and examination.*

11

*She is able to stand for about 20-30 min or perform light activity. She needs frequent breaks and also will change position from sitting to standing. Gets SOB [short of breath] easily. Can lift 20# but unable to carry for a long distance. Feels better in the early AM and becomes much more fatigued by evening. Repetitive motions are difficult. Standing, sitting, squatting, stooping are possible with appropriate breaks.* (AR 305)

These limitations are affirmed by the signature of a doctor whose signature is illegible. Ms. VanHoozer's limitations are disabling. The vocational expert testified unscheduled breaks during the workday preclude competitive employment. (AR 82) The ALJ, however, found Ms. Plunkett was not nearly as limited as Ms. VanHoozer stated. The ALJ found Ms. Plunkett could sit, stand, or walk about six hours each and did not find Ms. Plunkett needed any unscheduled breaks or the need to change position. (AR 22) The only reason give by the ALJ for discounting Ms. VanHoozer's opinions was that "these [limitations] appear to be restatements of the claimant's reports rather than Ms. VanHoozer's independent judgment of the claimant's work capabilities." (AR 25) This is contrary to the plain language of Ms. VanHoozer's report, which states that her conclusions are "[b]ased on Mrs. Plunkett's history and examination." ... The ALJ's only reason for discounting Ms. VanHoozer's opinions is not valid. The ALJ's decision is not supported by substantial medical evidence. See <u>Lauer v. Apfel</u>, 245 F.3d 700, 706 (8th Cir. 2001) (if the ALJ did not believe that the professional opinions available to him were sufficient to allow him to form an

opinion, he should have further developed
the record to determine, the degree to
which the claimant's impairments limited
her ability to engage in work-related
activities).

Docket No. 9, p. 12-13.

The Social Security Regulations provide a detailed
explanation of how the Commissioner evaluates and weighs
medical opinion evidence. See 20 C.F.R. §§ 404.1527(d),
416.927(d). Generally, "the medical opinions of 'treating
sources' on the nature and severity of a claimant's
impairments are given 'more weight' than non-treating sources
and are even given 'controlling weight' if certain conditions
are met. Id. §§ 404.1527(d), 416.927(d)." Lacroix v.
Barnhart, 465 F.3d 881, 885 (8th Cir. 2006). A 'treating
source' is defined as a 'physician, psychologist, or other
acceptable medical source' who treats the claimant. Id., §§
404.1502, 416.902. Similarly, 'medical opinions' are defined
as "statements from physicians and psychologists or other
acceptable medical sources." 20 C.F.R. §§ 404.1527(a)(2),
416.927(a)(2). A nurse practitioner is not an acceptable
medical source for purposes of 20 C.F.R. § 404.1513(a).
Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003).

13

However, "[a] nurse-practitioner... fit[s] the criteria of 'other' medical sources, who are appropriate sources of evidence regarding the severity of a claimant's impairment, and the effect of the impairment on a claimant's ability to work. Shontos, 328 F.3d at 426, see also Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007), stating:

> Other sources: Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists... Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

In this case, the nurse practitioner, Ms. VanHoozer, examined Ms. Plunkett and stated,

> [b]ased on Mrs. Plunkett's history and examination. She is able to stand for about 20-30 min or perform light activity. She needs frequent breaks and also will change position from sitting to standing. Gets SOB [short of breath] easily. Can lift 20# but unable to carry for a long distance. Feels better in the early AM and becomes much more fatigued by evening.

14

> Repetitive motions are difficult.
> Standing, sitting, squatting, stooping are
> possible with appropriate breaks.

Docket No. 7, Tr. 305.

As stated in the Plaintiff's brief, the ALJ rejected Ms. VanHoozer's statements, because the ALJ felt that Ms. Van Hoozer's conclusions too closely matched Ms. Plunkett's complaints. In fact, the ALJ opined that Ms. VanHoozer's conclusions appeared to be mere restatements of Ms. Plunkett's complaints. However, the ALJ's reason for discounting Ms. Van Hoozer's opinion is not supported by the text of what Ms. Van Hoozer wrote. Ms. VanHoozer clearly stated that her conclusions were based on her examination of Ms. Plunkett and Ms. Plunkett's history.[2]

Additionally, Courts have long recognized that almost all medical diagnosis begin with a patient's complaints. See Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997), stating that "[a] patient's report of complaints, or history, is an

---

[2] Although it is impossible for the Court to determine exactly why the ALJ disregarded Ms. VanHoozer's opinion, it seems that the ALJ based his conclusion that Ms. VanHoozer merely restated Ms. Plunkett's complaints on the fact that Ms. VanHoozer used a period rather than a comma after the word 'examination.'

15

essential diagnostic tool;" and <u>Brand v. Secretary of Dept.</u> <u>HEW</u>, 623 F.2d 523, 526 (8th Cir. 1980), stating that [a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." Accordingly, the fact that Ms. Van Hoozer's conclusions actually matched Ms. Plunkett's complaints is not a valid reason for discounting Ms. Van Hoozer's conclusions. Thus, on this issue, the ALJ's decision is not supported by substantial evidence in the record.

As discussed above, information from a nurse practitioner such as Ms. VanHoozer may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. Ms. VanHoozer's conclusions regarding the severity of Ms. Plunkett's condition give important insight into Ms. Plunkett's situation, the ALJ erred by failing to give a valid reason for discounting those opinions.

## B. Credibility

Next, Ms. Plunkett argues that the ALJ improperly discredited her testimony regarding her limitations. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the

claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient justification for doubting a claimant's credibility. See Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Courts have repeatedly stated that the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)

17

(en banc). Additionally, Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). Finally, the inability to afford medication cannot be used as a basis for a denial of benefits. Tang v. Apfel, 205 F.3d 1084, 1086 (8th Cir. 2000).

In her brief, the Plaintiff argues:

> The ALJ failed to properly evaluate Ms. Plunkett's testimony. The ALJ outlined the proper standard (AR 22), but failed to apply it (see AR 22-25). The ALJ failed to provide a cogent Polaski analysis. While a reviewing court will not remand simply on the basis of a conclusory ALJ decision, the court will remand when it is unable to ascertain whether the ALJ's denial was supported by substantial evidence. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999); Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000).

Ms. Plunkett goes on to argue the ALJ failed to credit Ms. Plunkett's obesity in his analysis, that the ALJ improperly discounted Ms. Plunkett's credibility based on the fact that she applied for unemployment benefits, and that the ALJ improperly considered Ms. Plunkett's past work history.

The Court notes, as the Plaintiff noted in her brief, that unlike many Social Security plaintiffs, Ms. Plunkett has

18

detailed work history and significant educational history. As Judge Jarvey in Iowa's Southern District recently affirmed, "a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Jimmerson v. Astrue, 717 F. Supp. 2d 840, 862 (S.D. Iowa 2010) citing Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir. 1984). A substantial work history does not prove disability. However, it does give a Plaintiff's testimony a veneer of credibility that can only be overcome if the ALJ points to specific contradictions in the record.

Based upon that standard, it seems clear the ALJ inappropriately discounted Ms. Plunkett's testimony. One credibility issue the ALJ pointed to was the fact that Ms. Plunkett applied for unemployment. However, this does not show a contradiction in the record. As pointed out in the Plaintiff's brief:

> The ALJ failed to take into account that, at the time she became disabled, Ms. Plunkett was 55 years and "advanced age." See, generally, Phillips v. Astrue, 671 F.3d 699, 707 (8th Cir. 2012) (whether Phillips should be moved to a higher age category). There is no inconsistency between drawing unemployment compensation and a disability claim for an older worker. The Commissioner has recognized that an

19

individual who is age 55 is considered "disabled" even if capable of performing some 1,600 light and sedentary occupations job classifications representing many thousands of jobs in the national economy. Cf. Vocational Rule 202.01, 202.02, 202.04, 202.06, 202.09; 20 C.F.R. Part 404, Subpt. P, 202.01, 202.02, 202.04, 202.06, 202.09 (claimant aged 55 or more who cannot perform past work, has no skills or cannot transfer skills, is disabled even if capable of performing the full range of sedentary work); SSR 85-15 (1600 light and sedentary job classifications). There is no inconsistency here.

Additionally, the ALJ noted instances where Ms. Plunkett was encouraged to use a c-pap and an inhaler, but apparently did not. Docket No. 7, Tr. 23. However, there is evidence Ms. Plunkett's non-compliance was due to cost issues. _Id._ As stated above, the fact that a plaintiff cannot afford medication cannot be held against them for purposes of a credibility determination. Finally, it is equally clear that the ALJ discounted Ms. Plunkett's obesity and how that affected her RFC and her ability to return to her past relevant work.

Based on the forgoing, the Court is persuaded that the ALJ's decision to discredit Ms. Plunkett's testimony regarding her subjective complaints and her ability to work was not

supported by substantial evidence on the record. There are
not inconsistencies in the record as a whole. Ms. Plunkett's
statements are supported by substantial evidence, including
Ms. VanHoozer's opinion discussed above, and the ALJ's
credibility finding was error.

**VI.   CONCLUSION**

It is clear the ALJ erred in the two areas discussed
above. The question thus becomes whether this Court should
remand for further consideration or solely for the purpose of
awarding benefits.

This Court has the authority to reverse a decision of the
Commissioner, "with or without remanding the cause for
rehearing," but the Eighth Circuit has held that a remand for
award of benefits is appropriate only where "the record
'overwhelmingly supports'" a finding of disability. 42 U.S.C.
405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000)
(citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir.
1992).

The Court has considered the entire record, the parties'
briefs, and the arguments presented at hearing. When the
medical evidence, including Nurse VanHoozer's records, are

considered, along with Ms. Plunkett's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and this matter is remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Plunkett's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 16th day of September, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa